## BROWN *v.* WIGGIN.

One who has advanced money on certain goods, relying upon a contract that they should be consigned to him for sale on commission, and to whom an invoice of the same has been forwarded, has no vested property in them until the agreement has been perfected by delivery.

A delivery having been once made, the fact that the goods are forwarded to the consignee at the expense of the consignor, is not a revocation or retraction of the delivery.

Goods marked and directed to the consignee at Philadelphia, were sent on board a packet at Dover, to be transported to Boston and there delivered to the consignor's agent, to be by him forwarded to Philadelphia, according to agreement. *Held,* that this constituted no delivery to the consignee.

But if the master of the packet to whom they were delivered at Dover had been authorized to deliver them to the consignee, or even to some other carrier for the purpose of delivering them to the consignee, *it seems* that the delivery would have been good and sufficient to perfect the agreement.

REPLEVIN for nineteen bales and one box of blankets. Plea, the general issue with a brief statement.

It appeared that the defendant was a deputy sheriff, and on the 19th of January 1841, attached the blankets as the property of the Mechanics Manufacturing Company, upon sundry writs against the company now pending in the Court of Common Pleas.

The plaintiff is a commission merchant in Philadelphia. The blankets were manufactured by the Mechanics Company, who have for some time past consigned the greater part of their goods to the plaintiff to sell for them on commission, and the plaintiff has made advances to them on their goods. The plaintiff offered evidence tending to show that in the month of December 1840, the company were largely indebted to him, but desired him to make farther advances to enable them to carry on their business. In that month he came to Rochester, and it was agreed that he should make farther advances, and that

Brown *v.* Wiggin.

the goods then manufactured and in the process of being manufactured should be consigned to him as security for advances already made and to be made, and for his liability for the company.

On the 1st day of January 1841 the company owed him about $80,000, balance of accounts, after being credited with all the goods they had consigned to him. In the latter part of December 1840 the plaintiff advanced to the company $5000, and about the 10th or 12th of January following he advanced $3600 more. Both of these sums were advanced after it was agreed that he should have the security of the goods as aforesaid. Charles S. Peaslee, a clerk of the plaintiff, came on with him and remained after he had gone, the plaintiff having directed him to have the bales of blankets sent on to Philadelphia.

On the morning of the first day of January 1841, the day on which Peaslee left Rochester, he went into the storehouse of the company with Mr. Kimball the agent of the company, and Kimball showed him the bales of blankets then manufactured and in the storehouse, and told him " he delivered them to him for David S. Brown." There were at this time in the storehouse only four bales, numbered 5529, 5530, 5536, and 5567. There were at this time no other manufactured goods in the storehouse, except some remnants. The agent at the same time delivered to Peaslee an invoice of the four bales, with a letter stating that the bales had been delivered. The key of the storehouse remained in possession of the company.

On the 7th day of January 1841, an invoice and consignment of 18 bales of blankets, 2 bales and 1 box of coating, including the bales now in dispute, except the four bales above mentioned, were prepared by the agent of the company, or his clerk, and inclosed in a letter directed to the plaintiff at Philadelphia, and put into the Post-Office.

About the 10th or 12th of January 1841, Peaslee came

again to Rochester, bringing with him the $3600, and the account current of the plaintiff with the company. He showed the account to the agent of the company, and it was admitted to be correct. In this account the company were credited with all sales, including the four bales delivered to Peaslee, and charged with the advances and acceptances of the plaintiff for the company. He paid the $3600, for the benefit of the company, before the attachment, the goods then having left Rochester to be shipped. The bales mentioned in the invoice of the 7th of January, were sent from Rochester by the agent of the company to Dover on the 7th or 8th of January. The goods were put on board a packet at Dover, to be carried to Boston, having been first marked in capitals, "David S. Brown, Phila." "(Me. Man. Co.)"

They were attached while on board the packet, before she left Dover, and carried on shore and stored. The master of the packet testified that he received them as the property of the company, and that the freight to Boston was charged to the company. Upon their arrival at Boston they were to be shipped for Philadelphia. He kept a book in which he made his entries of the freight, but no bill of lading was made out from Dover to Boston. The book contained charges of freight and the names of persons for whom it was carried, and the book was delivered to the agent who made his charges on the books of the company. When goods so shipped reached Boston, the agent of the company at Boston shipped them for Philadelphia, taking a bill of lading from the master of the Philadelphia packet.

Upon the foregoing facts, judgment to be rendered for the plaintiff or for the defendant as the court may order. The value of the property to be settled by an appraisal.

*Christie* (with whom was *Bartlett*), for the plaintiff. A delivery of goods to a carrier or master of a vessel, when

they are to be sent by a carrier or by water, is equivalent to a delivery to the purchaser. *Evans* v. *Marlett*, 1 Ld. Raym. 271; *Dutton* v. *Solomonson*, 3 B. & P. 582; *Dawes* v. *Peck*, 8 T. R. 330; *Ludlow* v. *Bowne*, 1 Johns. 15; *Summeril* v. *Elder*, 1 Binn. 106; *Griffeth* v. *Ingledew*, 6 Serg. & Rawle 429; *King* v. *Meredith*, 2 Campb. 639; *Copeland* v. *Lewes*, 2 Starkie N. P. 33; *Cox* v. *Harden*, 4 East. 211; *Brown* v. *Hodsdon*, 2 Campb. 36; *Groning* v. *Mendham*, 5 Maul. & Selw. 189. As a consequence of this doctrine, in cases of sale the title or general property upon such delivery vests in the vendee and thenceforth remains at his risk.

But in cases like the one now before the court the consignee, as soon as the goods are actually delivered to him in person, has a special property in them for advances. Still he is not the absolute owner. He has but a special property in them.

The plaintiff in this case need not show that he had a general or absolute property in the goods, or that they were at his risk, but only that he had a special interest in and right to them. If a delivery to the plaintiff in person would have given him such an interest, the delivery of the goods on board the ship at Dover, under the other facts stated in the case, must have the same effect. *Haille* v. *Smiths*, 1 Bos. & Pul. 563; Hilliard on Sales 108, sec. 27; *Vertue* v. *Jewell*, 4 Campb. 31; Long (Rand's Ed.) 273, and authorities cited.

It makes no difference that the company paid or were to pay the freight to Boston. *King* v. *Meredith*, 2 Campb. 639; *Swain* v. *Shepherd*, 1 M. & Rob. 223.

This is a good sale on the ground of a delivery to Peaslee, as to the four bales; and also that, as to the others, the sale had become absolute. It can make no difference that the first shipment was not to carry all the way.

Again. If a party claiming title under the seller, had notice of the prior sale, he can not allege any defect in the

sale for want of delivery. *Ludwig* v. *Fuller*, 17 Maine 162; and authorities cited. The goods were marked with Brown's name and place of residence, and were on board the ship to be carried to him, which was notice enough to the attaching creditors and the officers to put them upon inquiry, and to charge them with all the knowledge that might have been obtained upon inquiry. It is analogous to the case of one in possession of real estate under a deed not recorded. *Hadduck* v. *Wilmarth*, 5 N. H. 181.

*C. W. Woodman* (with whom was *Hale*), for the defendant.

1. By the civil law a transfer of property was not complete even by sale and delivery without payment of the price or security, unless credit be given. 2 Kent's Com. 552.

2. Where goods are consigned, they do not become the property of the consignee until they come under his actual control or dominion,.and where goods are shipped, it seems necessary for the consignee to have the bill of lading. In Louisiana it has been held that goods shipped could not be attached by the creditors of the shipper after the bill of lading had come into the hands of the consignee; but they might be attached by the creditors of the consignee. *McNeil* v. *Glass*, 13 Martin's Louisiana 261, cited in note to Kent's Com. 549.

To give to an invoice and acceptance thereon any of the vital properties of a bill of lading, is unwarranted by the custom of merchants or the authority of established cases.

3. The goods when attached were in this state, and were not in the actual possession of the plaintiff. The plaintiff was a factor of the Mechanics Manufacturing Company in a foreign State.

4. The delivery was imperfect against creditors of the Mechanics Manufacturing Company.

5. The contract between the plaintiff and the M. M. Co. was between principal and factor. The consignee accepted the drafts on the credit of the company's promise to remit blankets.

6. With respect to the four bales, if they ever had been delivered to the plaintiff, he has lost that delivery by suffering them to go back into the possession of the company mixed up with the other goods with no distinguishing marks upon them. *Dunklee* v. *Fales*, 5 N. H. 527.

PARKER, C. J. This is a very plain case. The rights of the parties depend upon the question whether the agreement for the consignment of the goods was, at the time of the attachment, an executory or an executed agreement. The goods at the time of the manufacture were the property of the Mechanics Company, notwithstanding the advances made by the plaintiff. There was no agreement by which the property could be held to be vested in the plaintiff. They were to be consigned to the plaintiff for sale on commission. This gave him no property in the goods until the agreement was executed and the consignment perfected.

To accomplish this, delivery was necessary either to the plaintiff or to some one for him.

Applying these principles, it appears that four bales of the goods in question were delivered to the plaintiff's clerk before the attachment was made. This was an execution of the agreement thus far. The fact that they were sent forward at the expense of the company along with the others, is not a revocation or retraction of the delivery. It was consistent with the nature of the transaction, and there is nothing to show a fraud upon creditors.

The residue of the goods claimed were never delivered to the plaintiff. The agreement remained executory as to them up to the time of the attachment. The delivery on board the packet for the purpose of being sent to Boston,

there to be delivered, not to the plaintiff's agent, but to the agent of the Mechanics Company, who was entrusted by the company with the duty of forwarding them to the plaintiff, was not an execution of the contract or a delivery to the plaintiff, notwithstanding his name was marked upon the bales. If the goods had been delivered on board the packet at Dover, with authority for the master of the packet to deliver to the plaintiff, or even to deliver to another carrier at Boston for the purpose of being delivered to the plaintiff, the case might have been different. The carrier might then have been regarded as the plaintiff's agent, the authority being to deliver to him, and the possession held for him. *Sumner* v. *Hamlet,* 12 Pick. 76. But the possession of a carrier whose authority was to deliver to an agent of the company, can not be regarded as the plaintiff's possession. *Baker* v. *Fuller,* 21 Pick. 318.

*Judgment for the plaintiff for the four bales, and for the defendant as to the residue.*